UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ x

BERNARD RIMPEL, M.D.                     :      **COMPLAINT**
                                         :
                    Plaintiff,           :      Docket No.:
                                         :      __17__ CV __6867__(_____)
         -against-                       :
                                         :
ADVANTAGECARE PHYSICIANS, P.C.           :      **JURY TRIAL DEMANDED**
                                         :
                    Defendant.           :
_____ x

## NATURE OF ACTION

1.     Plaintiff, BERNARD RIMPEL, M.D. ("RIMPEL" or "Plaintiff") brings this action against Defendants ADVANTAGECARE PHYSICIANS, P.C. ("ACP" or "Defendant") for damages (compensatory and punitive) for injuries Plaintiff has sustained as a result of Defendant's employment discrimination against Plaintiff in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 ("ADEA"), the New York State Human Rights Law, New York Executive Law § 296 et seq., (the "Executive Law") and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").

2.     The Plaintiff, through his attorneys, the LAW OFFICE OF CHRISTINE A. RODRIGUEZ, complaining of the Defendants, respectfully alleges:

## JURISDICTION

3.     Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(4).  The Court has supplemental jurisdiction over the claims brought under the Executive Law and the City Law pursuant to 28 U.S.C. § 1367.

4.     As the unlawful practices complained of herein occurred within the Eastern District of New York, venue is proper in this District pursuant to 28 U. S. C. § 1391.

5.     The amount in controversy exceeds $75,000.00 excluding interest and costs.

6.     Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 6, 2017.

7.     The EEOC issued a "Notice of Right to Sue" to Plaintiff dated August 24, 2017 and received by Plaintiff on August 28, 2017.  The instant action was commenced within 90 days of Plaintiff's receipt of the "Notice of Right to Sue."

## PARTIES

8.     Plaintiff, is a resident of Suffolk County in New York State.

9.     Plaintiff, who was born in 1951, is 66 years old.

10.     Plaintiff entered into an employment agreement with Defendant in October 2012, after Defendant took over the medical office in Brooklyn, New York (Empire Medical Office, 546 Eastern Parkway, Brooklyn, NY 11225), where Plaintiff had worked since 1990 and provided 26 years of service with the same medical group.

11.     Defendant ACP is a domestic professional corporation organized and existing under the laws of the State of New York State with its corporate offices at 55 Water Street, New York, New York.

12.     ACP is a multi-specialty medical practice with medical centers in Manhattan, Brooklyn, Queens, Staten Island, and on Long Island at 36 office locations.

## FACTUAL ALLEGATIONS

13.     Plaintiff began his employment as a general surgeon with Defendant after ACP merged with Plaintiff's former employer in 2012.

14.     In October 2012, Plaintiff entered into an employment agreement with City Care Physician Practice, P.C., which was soon thereafter reformed as Defendant, AdvantageCare

Physicians, P.C. (ACP)

15.     The employment agreement with ACP was for Plaintiff's continued employment to provide professional services as a physician at the Empire Medical Office in Brooklyn New York.

16.     At the time of the execution of this agreement, Plaintiff had been working at the same medical center in Brooklyn, New York, with his former employer, now merged with Defendant, since 1990.

17.     Plaintiff continued to work employed by Defendant at the Empire Medical Office until Plaintiff's employment was terminated in December 2016 after 26 years of service as a general surgeon.

18.     On October 6, 2016, Allen Boxbaum, ACP's Regional Vice President at that time, informed Plaintiff that the Defendant had chosen to exercise the "60-day clause" in Plaintiff's employment agreement in order to terminate Plaintiff's employment "without cause."

19.     This was confirmed to plaintiff in writing in a letter from Mr. Boxbaum and a subsequent email from Michelle Lydon, ACP's Vice President of Human Resources at the time.

20.     Plaintiff was surprised and shocked by ACP's decision to terminate his employment at that time.

21.     Plaintiff had recently turned 65 in June of 2016.

22.     Plaintiff had always been a loyal employee, with high performance ratings and patient satisfaction scores, particularly in the time since the Defendant took over the medical practice.

23.     Plaintiff also regularly performed more surgeries than any other physician in my group.

24.     At the time that the Defendant terminated Plaintiff's employment, the general surgery group at Plaintiff's medical office in Brooklyn was understaffed and would be greatly impacted by the loss of an active and productive surgeon.

25.     About two months prior to getting notice of the end of his employment, Plaintiff asked Mr. Boxbaum when the Urology physician staff, which had eliminated about six months prior, would be replaced.

26.     Plaintiff had referred two potential Urology candidates, who were seasoned, and experienced physicians close to Plaintiff's age, for those open positions.

27.     Mr. Boxbaum told Plaintiff that ACP wanted a younger staff and that they were looking for young residents just finishing their training.

28.     About six months before Plaintiff was fired, when Plaintiff asked Mr. Boxbaum about some administrative issues, Mr. Boxbaum greeted Plaintiff by saying, "Hey old chap.  When are you retiring?"

29.     At the time, ACP had just hired a much younger female surgeon, as well as two other younger male surgeons.

30.     Around the same time that Plaintiff was fired, Defendant also fired two other surgeons who were over the age of 65, and yet another over physician who was over 65 years left when the Defendant cut his salary by more than 45%.

31.     A few months after Plaintiff was fired, ACP undertook a large reduction in force that impacted many of its offices, most of the physicians selected for layoff at the time were over the age of 40, and many were closer to Plaintiff's age, while only a handful of the selectees were younger.

32.     Additionally, although Plaintiff's employment agreement did not address the issue

of severance, Defendant had a severance plan in place called the AdvantageCare Physicians Severance Pay Plan for employees, including physicians, whose employment was terminated due to reduction in force or any other reasons that were not "for cause," which covered Plaintiff.

33.     Although Plaintiff had been assured that he had not been terminated for cause, Plaintiff was denied severance to which he was entitled under Defendant's severance plan.

34.     Defendant tried to justify its decision to terminate Plaintiff's employment, a decision made very soon after Plaintiff turned 65, which Defendant had expressly stated was "without cause," and Defendant's decision to deny Plaintiff severance, by pointing to past complaints about Plaintiff and purported performance deficiencies that had been unfounded and long resolved before Plaintiff was fired.

35.     Vague and unfounded complaints were made, two years before Plaintiff was notified that ACP exercised the 60-day clause in his contract, by a nurse who Plaintiff had complained about for incompetence, likely in an attempt by that nurse to distract and discourage Defendant from disciplining the nurse for incompetence.

36.     Rather than address the incompetency issue with the nurse, Defendant placed Plaintiff on a performance improvement plan and compelled Plaintiff to undergo "emotional intelligence" training.

37.     Plaintiff did as Defendant instructed and there were no subsequent complaints about him from staff that were brought to his attention before Defendant terminated Plaintiff's employment.

38.     Defendant also offered several other unfounded reasons why Plaintiff was terminated and denied severance, almost all of which were based on events that occurred after Plaintiff was given the 60-day notice on October 6, 2016.

39.     These included that the Plaintiff "crunched" his schedule, was often out of the office without notice and performed procedures at Brooklyn Hospital instead of the Empire Office, had an ongoing issue and was non-compliant with medical documentation, and that Plaintiff unilaterally cancelled eight surgeries, placing patient care at risk,

40.     These excuses were clear pretexts to mask the fact that Plaintiff was targeted to be fired, as were many other physicians soon after him, because Plaintiff was over a certain age.

41.     For instance, part of Plaintiff's regular duties and responsibilities as a general surgeon for Defendant was that Plaintiff could get called to the hospital at any time for emergencies and on every occasion that Plaintiff was not in the office, Plaintiff was in the hospital taking care of the patients referred to Defendant who could not be treated at the medical office.

42.     Whenever Plaintiff's duties and responsibilities required Plaintiff to be out of the office, administrative staff at the Empire Office was always informed and knew how to reach Plaintiff.

43.     Although Defendant claims that Plaintiff inappropriately engaged in extracurricular work at Brooklyn Hospital, any extra services that Plaintiff provided at Brooklyn Hospital were pursuant to a contract between Emblem Health - the Defendant's main insurance carrier, Defendant and Brooklyn Hospital.

44.     Any services Plaintiff provided at Brooklyn Hospital were pursuant to that contractual agreement and authorized by Defendant.

45.     Additionally, though Defendant claimed that Plaintiff performed procedures at the Brooklyn Hospital that could have and should have been performed at the Empire Medical Office, that office was not properly equipped for any type of surgery as there are no dedicated surgical rooms, there is no proper equipment, no means for proper sterilization procedures or adequate

staff, among other deficiencies.

46.     The procedures that Plaintiff performed at Brooklyn Hospital were done there because it was not medically sound to do otherwise and it would have compromised patient safety to attempt any procedures at the medical office.

47.     Additionally, Plaintiff's medical documentation was accurate and sufficient, and the Defendant tried to exploit failed documentation audits that were the result of new shorter per patient time limitations that had been imposed by Defendant at the time.

48.     The audit reviewer for Defendant had been pushing providers to make more detailed and longer documentation, which was meant, in most cases, to justify a higher insurance reimbursement coding fee to benefit Defendant financially.

49.     Plaintiff had repeatedly complained that there was just enough time with the shortened per patient time limit set to 15 minutes to examine a sick person and write an accurate and adequate note for proper medical documentation, but no time to write extensive notes that might justify a higher billing code simply because the Defendant sought to generate more revenue.

50.     In fact, prior to these audits, the providers were allowed more time with each patient, and documentation was not an issue.

51.     Although Defendant claimed that Plaintiff unilaterally cancelled eight surgeries after he was given notice of his termination, and placed patient care at risk, the surgeries that Plaintiff cancelled for rescheduling were for non-urgent procedures.

52.     Plaintiff cancelled non-urgent procedures once he knew that his employment would soon end so that he could accommodate eight urgent cases before Plaintiff was no longer employed.

53.     Plaintiff took this action to assist patients with cancer or highly suspicious matters

whose surgeries could not wait for the backlog Plaintiff's departure would create until someone replaced him and Plaintiff informed ACP's regional administrator Thomas Marino of his actions and the reasons for them.

54.    Plaintiff performed 366 surgical procedures between January 2016 and November 2016, the highest volume for the surgical department and Plaintiff had the highest number of office visits during that time.

55.    Plaintiff also maintained one of the highest rated patient satisfaction reports from Press Ganey who provided statistics on the medical staff to the Defendant.

56.    Physicians employed by the Defendant, including Plaintiff, have their work product measured by volume and their compensation is tied to and calculated by Relative Value Unit ratios (RVU) used by Medicare to determine reimbursement amounts to providers.

57.    RVUs measure the relative time, skill, training and intensity required of a physician to provide a given service.

58.    Between 2014 and 2016, Plaintiff's compensation consistently increased based on high RVU ratings.

59.    There was no other reason for Defendant to terminate Plaintiff's employment, which it claimed was done without cause, other than because of Plaintiff's age.

**FIRST CAUSE OF ACTION**
**Age Discrimination Under the ADEA**

60.    Plaintiff repeats, reiterates and realleges paragraphs 1 to 59 of this Complaint as if fully set forth herein.

61.    By the acts and practices described above, Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his age in violation of the ADEA.

62.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

## SECOND CAUSE OF ACTION
## Age Discrimination Under the Executive Law

63.     Plaintiff repeats, reiterates and realleges paragraphs 1 to 62 of this Complaint as if fully set forth herein.

64.     By the acts and practices described above, Defendants has discriminated against Plaintiff in the terms and conditions of his employment and by acting adversely against Plaintiff on the basis of Plaintiff's age.  Defendant's discrimination is in violation of the Executive Law §§ 290 to 297.

65.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

## THIRD CAUSE OF ACTION
## Age Discrimination Under the Administrative Code

66.     Plaintiff repeats, reiterates and realleges paragraphs 1 to 65 of this Complaint as if fully set forth herein.

67.     By the acts and practices described above, Defendants has discriminated against Plaintiff in the terms and conditions of his employment and by acting adversely against Plaintiff on the basis of Plaintiff's age.  Defendant's discrimination is in violation of the Administrative Code §§ 8-101 to 131.

68.     Defendant acted with malice and/or reckless indifference to Plaintiff's statutorily

protected rights.

69.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory acts.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an award:

(a)     directing Defendants to pay Plaintiff compensatory damages, in an amount that exceeds the jurisdictional minimum of this court, including, but not limited to back pay, front pay and benefits;

(b)     directing Defendant to pay Plaintiff punitive damages;

(c)     directing Defendant to pay an additional amount to compensate Plaintiff for the emotional distress and reputational damage Defendants' unlawful conduct has caused Plaintiff, an amount that exceeds the jurisdictional minimum of this court

(d)     awarding Plaintiff such interest as is allowed by law;

(e)     awarding Plaintiff his reasonable attorneys' fees and costs; and

(f)     granting such other and further relief as the Court deems necessary and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.


Dated:  New York, New York
        November 22, 2017

                        LAW OFFICE OF
                        CHRISTINE A. RODRIGUEZ

                        Christine A. Rodriguez, Esq.
                        Attorneys for Plaintiff
                        225 Broadway, Suite 2900
                        New York, New York 10007
                        (212) 430-6525

*Index No.* __17__ *CV* __6867__                                              *Year*  2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BERNARD RIMPEL, M.D.

                              Plaintiff,

          -against-

ADVANTAGECARE PHYSICIANS. P.C.

                              Defendant

# COMPLAINT

### LAW OFFICE OF CHRISTINE A. RODRIGUEZ

**ATTORNEYS FOR
PLAINTIFF, BERNARD RIMPEL, M.D.**

**225 BROADWAY
SUITE 2900
NEW YORK, NY 10007
(212) 430-6525**

*Dated:* November 22, 2017