UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BERNARD RIMPEL, M.D.,

                Plaintiff

     -against-

ADVANTAGECARE PHYSICIANS, P.C.,

                Defendant.

**MEMORANDUM & ORDER**
**17-CV-6867 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Bernard Rimpel, a physician, brings this employment discrimination action against his former employer, AdvantageCare Physicians, P.C. ("ACP" or "Defendant"). (Compl. (Dkt. 1).) Plaintiff alleges that ACP unlawfully discriminated against him because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*.

Defendant moves for summary judgment on all claims. (Def. Mot. for Summ. J. (Dkt. 35); Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 39); Reply (Dkt. 44).) Plaintiff opposes the motion. (Mem. in Opp. to Mot. for Summ. J. ("Opp.") (Dkt. 43).) For the reasons set forth below, Defendant's motion is GRANTED with prejudice.

## I.    BACKGROUND[1]

Defendant ACP is a medical practice that operates multiple facilities throughout the New York metropolitan area, including the Empire

---

[1] The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the

Medical Center in Brooklyn. (Def.'s R. 56.1 Stmt. ("Def. 56.1") (Dkt. 36) ¶¶ 1-2.) Plaintiff began working at the Empire Medical Center in or around 1990, before it was operated by ACP. (Tr. of Dec. 6, 2018 Dep. of Pl. ("Pl. Tr.") (Dkt. 40) at 21:17-22:11.) In or around October 2012, ACP's predecessor, City Care Physician Practice, P.C. ("City Care"), acquired the Central Brooklyn Medical Group, which operated the Empire Medical Center, and Plaintiff became an employee of City Care. (Pl.'s R. 56.1 Stmt. ("Pl. 56.1") ¶ 2; Def. 56.1 ¶ 2.) In November 2013, City Care reorganized as ACP. (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2.)

Plaintiff's employment relationship with ACP began in November 2013, pursuant to an October 3, 2012 agreement between Plaintiff and City Care. (Pl. 56.1 ¶ 3; Def. 56.1 ¶ 5; Employment Agreement ("Agreement") (Dkt. 37-3) at 1.) At the time Plaintiff became an employee of ACP he was 62 years old. (Def. 56.1 ¶ 5.) Plaintiff's employment agreement provided that his employment could be "terminated by [Defendant] at any time after the first calendar year, by giving sixty (60) days prior written notice to" Plaintiff and did not require that Plaintiff's employment be terminated only for cause. (Agreement at 8; Def. 56.1 ¶¶ 4, 25.) ACP maintained specific anti-discrimination policies during Plaintiff's employment. (Def. 56.1 ¶ 30.) Plaintiff practiced as a general surgeon for the duration of his employment at ACP. (*Id.* ¶ 7.)

Beginning in mid-to-late 2014, ACP's Human Resources Department ("HR") received complaints from various employees about Plaintiff's treatment of staff. (*Id.* ¶ 15.) An HR employee, Nicolle Comefero, conducted an investigation of the complaints that involved interviews with eight other employees. (*Id.* ¶ 16; HR Investigation Notes (Dkt. 45-1).) In those interviews, multiple employees described incidents in which Plaintiff yelled or cursed at other ACP staff. (HR

---

light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

Investigation Notes.) At the conclusion of the investigation, Comefero determined that Plaintiff had exhibited behavioral issues and had failed to follow certain office protocols, including check-in and billing procedures. (Def. 56.1 ¶ 16; Decl. of Nicolle Comefero ("Comefero Decl.") (Dkt. 26) ¶ 6.) Plaintiff disputes the validity of the complaints. (Decl. of Pl. ("Pl. Decl.") (Dkt. 41) ¶ 9.) However, Plaintiff testified that he raised his voice at a nurse sometime in 2015 and is aware that the incident was the subject of multiple complaints. (Pl. Tr. at 86:24-90:24.) Plaintiff also does not dispute that he occasionally failed to follow certain check-in and data entry procedures. (*Id*. at 104:12-14; 125:12-18.)

In an effort to address Plaintiff's performance and behavioral issues, Defendant required Plaintiff to participate in a 60-day Performance Improvement Plan ("PIP") beginning in August 2015. (Def. 56.1 ¶ 18.) The PIP required Plaintiff to participate in several one-on-one Emotional Intelligence Training sessions with a professional trainer provided by ACP. (*Id.* ¶ 19; Tr. of Jan. 31, 2019 Dep. of Nicolle Comefero ("Comefero Tr.") (Dkt. 40) at 42:9-12.) Plaintiff completed the training. (Def. 56.1 ¶ 22.) Comefero testified that she received negative feedback from the trainer with respect to Plaintiff's participation in the trainings, including that he had been "argumentative and resistant." (*Id.* ¶ 22; Comefero Tr. at 49:21-23.) Plaintiff was never informed that there were any issues with his participation and disputes the validity of this characterization. (Pl. 56.1 ¶ 18, 22.)

Comefero testified that HR continued to receive complaints about Plaintiff's behavior in 2016. (Def. 56.1 ¶ 23; Comefero Decl. ¶ 8.) Plaintiff was not made aware of these complaints. (Pl. 56.1 ¶ 23; Pl. Decl. ¶ 13.) Additionally, Defendant produced an internal memorandum indicating that Plaintiff had continued to struggle to follow office protocols in 2016 and had failed an internal audit in February

2016.[2] (Def. 56.1 ¶ 24; Audit Summary (Dkt. 37-10) at ECF p. 392.) Plaintiff disputes Defendant's contention that he failed the February 2016 audit. (Pl. 56.1 ¶ 24; Pl. Decl. ¶¶ 21, 22; Audit Report (Dkt. 41) at ECF p. 829.)

Plaintiff testified that Allen Boxbaum, who at the time was ACP's Vice President of Operations, made three sets of remarks in 2016 concerning either Plaintiff's age or the ages of prospective ACP employees. (Def. 56.1 ¶ 9; Pl. Tr. at 40:24-45:17.) According to Plaintiff, all three conversations initially concerned ACP's need to hire a urologist to work at the Empire Medical Center following the departure of a physician in that specialty area. (Pl Tr. at 41:8-12, 42:24-43:7, 44:7-13.) In the first conversation, according to Plaintiff's testimony, he told Boxbaum that ACP needed to hire a urologist and Boxbaum responded, "no, we are not hiring any older guy, we want young residents because they are much cheaper." (*Id*. at 41:8-14.)

In the second conversation, which according to Plaintiff occurred about a month after the first conversation and was essentially duplicative of the first exchange, Plaintiff recommended to Boxbaum that ACP hire certain "senior urologists," of Plaintiff's approximate age, who could "come to cover the urology clinic" at Empire Medical Center, to which Boxbaum allegedly responded, "no, no. We don't want any older guy. We want resident[s], find me young residents." (*Id*. at 42:19-22; 42:42-43:10, 43:21-24.) Boxbaum testified that in his recollection of the conversation with Plaintiff, he asked Plaintiff to pass along the urologists' resumes but noted that ACP was looking to hire urologists with "robotic fellowship certifications," which Plaintiff represented that his suggested candidates did not possess. (Tr. of Jan. 31, 2019 Dep. of Allen Boxbaum ("Boxbaum Tr.") (Dkt. 40) at 56:4-57:11.)

---

[2] ACP requires its physicians to undergo annual audits "to determine whether the physician is engaged in appropriate medical decision making, appropriate coding/billing, and appropriate documentation." (Comefero Decl. ¶ 8.)

The third conversation occurred in May or June 2016, at a lunch following a monthly meeting at Empire Medical Center. (Pl. Tr. at 44:7-45:5.) Plaintiff testified that "[a]gain [he] approach[ed] [Boxbaum] about the urology problem" and Boxbaum responded, "no, no. Don't mention that. How about you? When are you retiring?" (*Id*. at 44:10-13.) Boxbaum testified that he never discussed retirement with Plaintiff. (Boxbaum Tr. at 59:21-23.)

On October 6, 2016, when Plaintiff was 65 years old, Defendant notified Plaintiff that his employment would be terminated without cause effective December 6, 2016. (Def. 56.1 ¶ 26; Pl. 56.1 ¶ 20.) Comefero testified that, while Plaintiff was terminated without cause pursuant to his employment agreement, the decision was based on Plaintiff's continuing performance and behavioral issues. (Def. 56.1 ¶ 28; Comefero Decl. ¶ 9.) Boxbaum participated in the meeting in which Plaintiff was informed of the termination, but he was not otherwise involved in the decision to terminate Plaintiff's employment. (Def. 56.1 ¶ 14; Pl. 56.1 ¶ 11.) Plaintiff submitted surveys suggesting that he was well regarded by patients at the time of the termination. (Patient Surveys (Dkt. 41) at ECF p. 824-827.)

Defendant did not hire a new general surgeon to replace Plaintiff.[3] (Def. 56.1 ¶ 37.) Defendant retained the only other general surgeon at the Empire Medical Center, Dr. Brian Hall, who was 41 years old at the time of Plaintiff's termination and whom Plaintiff had trained. (Def. 56.1 ¶ 29; Pl. Tr. at 133:7-9.) According to Plaintiff, Dr. Hall took over the care of Plaintiff's patients and called Plaintiff regularly for advice regarding procedures. (Pl. 56.1 ¶ 29; Pl. Tr. at 133:7-13.) Dr.

---

[3] Plaintiff contends that ACP "replaced" him with Dr. Brian Hall, but Dr. Hall was hired prior to Plaintiff's termination and worked at ACP during Plaintiff's tenure. (Pl. 56.1 ¶¶ 34, 37.) Plaintiff also alleges that ACP hired three younger surgeons six months prior to his termination. (Compl. ¶¶ 28-29.) However, Plaintiff offers no evidence to support this claim.

Hall's employment was later terminated by ACP.[4] (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 29.)

A few months after Plaintiff's employment was terminated, Defendant effectuated a company-wide Reduction-in-Force ("RIF") with an intent to "eliminat[e], among other things, general surgery practices and keep[] certain specialty practices." (Def. 56.1 ¶ 35.) The RIF resulted in the termination of 25 physicians, including two general surgeons. (RIF Spreadsheet (Dkt. 37-9) at ECF p. 385-390.) Fifteen of the terminated physicians were age 60 or older. (*Id.*) Three were ages 50 to 59, four were ages 40 to 49, and three were ages 30 to 39. (*Id.*) The two general surgeons who were terminated were 41 and 75. (*Id.*)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this [c]ourt will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).[5] "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A party may not rely on

---

[4] Defendant characterizes the timing of Dr. Hall's termination as "shortly after" Plaintiff's termination. Plaintiff alleges that Dr. Hall was terminated in late 2018. (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 29.)

[5] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

6

mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). Nonetheless, the Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see also Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000).

### III. DISCUSSION

#### A. Legal Framework

In analyzing employment discrimination claims brought under the ADEA and NYSHRL, courts employ the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g., Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (applying *McDonnell Douglas* framework to age discrimination claims under the ADEA); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (applying *McDonnell Douglas* framework to NYSHRL claims). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination by a preponderance of the evidence. If the plaintiff succeeds, the burden shifts to the defendant, who must articulate a legitimate, nondiscriminatory basis for the adverse employment action. If the defendant carries its burden at the

second stage, the plaintiff then bears the burden of establishing that the reason proffered by the defendant is a pretext for discrimination, rather than the true reason for the adverse employment action. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).[6]

As explained below, the court finds that there is a genuine dispute as to whether Plaintiff establishes a prima facie case of discrimination at the first step of the analysis, that Defendant carries its burden of production at the second step, and that Plaintiff cannot establish pretext at the third step. Accordingly, because Plaintiff cannot prevail on his discrimination claims, the court grants Defendant's motion for summary judgment.

### B.  Prima Facie Case

"Under the *McDonnell Douglas* scheme, establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). "To establish a prima facie case, a plaintiff with an age discrimination claim must show (1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Bucalo*, 691 F.3d at 129. These are "minimal"

---

[6] The Second Circuit has explained that "[w]hile it is unclear whether *McDonnell Douglas* . . . appl[ies] to NYCHRL claims and, if so, to what extent it applies, the question is also less important because the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013). Thus, summary judgment for an employer on a plaintiff's NYCHRL claim is appropriate "only if the record establishes as a matter of law that discrimination played *no* role in [the employer's] actions." *Id*. (emphasis in original). As explained below, the court finds that summary judgment for Defendant is warranted with respect to Plaintiff's NYCHRL claim, as well as his ADEA and NYSHRL claims.

requirements, and the burden they impose on a plaintiff is "not onerous." *Id*. at 128.

There is no question that Plaintiff was within the age group protected by the statutory provisions under which he brings his claim. The ADEA's protections apply to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). The NYSHRL prohibits age discrimination in employment against "an individual eighteen years of age or older." N.Y. Exec. Law § 296(3-a). The NYCHRL bars discrimination on the basis of an employee's "actual or perceived age" regardless of the age of the employee. N.Y.C. Admin. Code § 8-107(1)(a). Plaintiff, who was 65 years old at the time he was terminated by Defendant, is plainly within the protected class under each of these statutory schemes. The parties do not dispute that Plaintiff was qualified to work as a general surgeon, or that Defendant's termination of Plaintiff's contract constituted an adverse employment action. Thus, Plaintiff can establish the first three elements of a prima facie case of age discrimination.

"[A]n inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in [] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (superseded on other grounds). In the context of age discrimination claims, an inference of discrimination arises, for example, when the plaintiff is "replaced by someone substantially younger." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 187 (2d Cir. 2006).

Plaintiff contends that three sets of circumstances surrounding his termination give rise to an inference of discrimination. First, following his termination his workload was reassigned to Dr. Hall, the other general surgeon at Brooklyn Medical Center, who was more than two decades

9

younger than Plaintiff. Second, Boxbaum's alleged remarks suggested an interest in Plaintiff's retirement plans and a preference for hiring younger physicians. Third, the majority of the physicians who were terminated as part of ACP's RIF, which occurred shortly after Plaintiff's termination, were at least 60 years old.

Dr. Hall was not specifically hired or promoted to fill the position vacated by the termination of Plaintiff's employment. Rather, Plaintiff and Dr. Hall worked together at Empire Medical Center during the latter part of Plaintiff's tenure. (Def. 56.1 ¶ 29.) Nonetheless, Plaintiff alleges that Dr. Hall "replaced" him and was "put . . . in charge of [his] patients." (Pl. Tr. at 133:7-13.) At least one court in this circuit has found that the redistribution of a terminated employee's work among multiple younger colleagues is an "unexceptional circumstance" that is "insufficient to create an inference of discrimination." *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 505 (S.D.N.Y. 2012). Here, construing the facts in the light most favorable to Plaintiff, the redistribution of Plaintiff's work to a single younger colleague, rather than to a collection of younger colleagues, is slightly more probative of discrimination than the "unexceptional circumstance" in *Delaney*. A jury could reasonably conclude, on these facts, that Dr. Hall's absorption of Plaintiff's workload made him Plaintiff's *de facto* replacement and therefore gives rise to an inference of age discrimination.

The alleged remarks made by Boxbaum to Plaintiff bolster the court's conclusion that a genuine issue of material fact exists as to Plaintiff's ability to establish an inference of discrimination. Remarks regarding a plaintiff's age or suggesting an employer's preference for younger workers may give rise to an inference that the plaintiff's termination was motivated by age discrimination, though "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (abrogated on other grounds). Thus, "[f]or example, remarks made by

someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decisionmaker was motivated by the discriminatory sentiment expressed in the remark." *Id.*; *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (finding that remarks supported an inference of discrimination where they were made by a company executive, rather than "by random coworkers who were uninvolved in the decisionmaking process").

While Boxbaum was not Plaintiff's direct supervisor and was not involved in the decision to terminate Plaintiff, he was an executive-level employee at ACP, and he attended the meeting at which Plaintiff was informed of his termination. (Def. 56.1 ¶¶ 11-14; Pl. 56.1 ¶¶ 11-14.) A jury could reasonably conclude on these facts that Boxbaum was not merely a "random coworker[]" whose views were irrelevant to the decision to terminate Plaintiff, *see Kirsch*, 148 F.3d at 162, but rather someone whose views may have informed the adverse employment decision, even though the decision was not one for which he bore direct responsibility.

The reassignment of Plaintiff's work to a younger physician and the age-related remarks made by Boxbaum, taken together, create a genuine issue of material fact as to whether the circumstances surrounding Plaintiff's termination give rise to an inference of age discrimination. Viewed in the light most favorable to Plaintiff, a jury might reasonably conclude either that Plaintiff has or has not carried his initial burden of establishing a prima facie case. Accordingly, the court declines to grant summary judgment for Defendant on the theory that Plaintiff cannot establish a prima facie case.[7]

---

[7] Plaintiff also claims that the RIF that occurred after his termination supports an inference that he was fired because of his age. Because Plaintiff was not terminated in connection with the RIF, the RIF is not particularly probative of the reasons for Plaintiff's termination. Moreover, "claims arising from the results of a firm's force reduction will generally not lie where the record demonstrates that

### C. Nondiscriminatory Justification

"[A] plaintiff's demonstration of her prima facie case shifts the burden of production to the defendant, who must produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Bucalo*, 691 F.3d at 132. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. To carry its burden, the defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection," such that the explanation is "legally sufficient to justify a judgment for the defendant" and "frame[s] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Id*. at 255-56.

Defendant argues that it terminated Plaintiff's employment due to "behavioral issues and a failure to follow important office protocols." (Mem. at 6.) Defendant's claim is corroborated by documentary and testimonial evidence that is not in dispute. Comefero testified that ACP received "a lot of complaints from the staff" regarding Plaintiff's behavior, and that a subsequent investigation by ACP's HR staff yielded the conclusion that Plaintiff "did have behavioral issues." (Comefero Tr. at 29:4-7, 31:20-22.) She also testified that while Plaintiff completed the emotional intelligence training that ACP required of him, she received feedback from the trainer that he was "very argumentative and resistant." (*Id*. at 49:20-23.) Additionally, Comefero testified that she continued to receive complaints from ACP staff regarding Plaintiff's behavior in 2016, following Plaintiff's completion of the PIP. (Comefero Decl. ¶ 8.) Documentary evidence appears to corroborate Comefero's

---

the reorganization was a business decision made on a rational basis." *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 657 (2d Cir. 2009). Here, the record suggests that the primary purpose of the RIF was ACP's business decision to prioritize specialty practices over general surgery practices. (Def. 56.1 ¶ 35.) The RIF therefore does not support an inference of a discriminatory motive for Plaintiff's termination.

testimony. An ACP HR document from December 10, 2014 summarizes interviews about Plaintiff's behavior with ACP staff members, several of whom described behavior that included yelling and cursing at colleagues. (HR Investigation Notes at ECF p. 896-902.) Comefero also testified that Plaintiff failed to follow office protocol, including by failing to comply with required scheduling, billing, and documentation practices. (Comefero Tr. at 30:23; Comefero Decl. ¶¶ 6, 8.) Documentary evidence appears to corroborate Defendant's claim that Plaintiff had recurring issues complying with certain aspects of office protocol. (*See* Audit Summary at ECF p. 392.)

Defendant's evidence that Plaintiff exhibited—or, at a minimum, was perceived by colleagues and administrators as exhibiting—volatile and aggressive behavior and poor adherence to office protocols is sufficient to satisfy its burden of production. The alleged issues with Plaintiff's behavior and performance constitute a "legitimate, nondiscriminatory reason" for his termination. *Bucalo*, 691 F.3d at 132. Because the evidence produced by Defendant is "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not [] motivated by discriminatory animus," "the employee's prima facie case of discrimination [is] rebutted." *Burdine*, 450 U.S. at 257.

### D. Pretext

At the third stage of the *McDonnell Douglas* inquiry, the plaintiff "may no longer simply rely on having made out a prima facie case" and the court, in deciding whether to grant summary judgment, must "determine, by looking at the evidence [the plaintiff] has proffered and the counter-evidence [the defendant] has presented, whether [the plaintiff] has raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of the [the defendant's] decision to fire [him]." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). In so deciding, "it is important to consider whether the explanations that [the defendant] gave for [the plaintiff's] firing were pretextual." *Id*.

To prevail on a claim brought under the ADEA, a plaintiff "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-78 (2009).[8] New York courts have not definitively resolved whether a plaintiff must establish that age was the 'but-for' cause to prevail on a claim under the NYSHRL. *See, e.g., DeKenipp v. State*, 949 N.Y.S.2d 279, 282 (3d Dep't 2012). However, because "[t]he law governing ADEA claims has been held to be identical to that governing claims made under the [NYSHRL]," the Second Circuit has "assume[d], without deciding, that the Supreme Court's *Gross* decision affects the scope of the [NYSHRL] law as well as the ADEA." *Gorzynski*, 596 F.3d at 105 n.6. Claims brought under the NYCHRL must be analyzed "separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109. A plaintiff may defeat a defendant's motion for summary judgment on NYCHRL claims by establishing that a question of fact exists as to whether discrimination played any role in the adverse employment action. *See id*. at 110 n.8.

Here, no reasonable jury could conclude by a preponderance of the evidence that Plaintiff's termination was partially motivated by age discrimination, let alone that age discrimination was the "but-for" cause of his termination. Plaintiff's sole evidence that Defendant was motivated by discriminatory animus is Plaintiff's own testimony about

---

[8] Prior to the Supreme Court's decision in *Gross*, claims under the ADEA were analyzed similarly to employment discrimination claims brought under Title VII, such that at the final stage of the *McDonnell Douglas* inquiry "the employee could prevail if the evidence, viewed in the light most favorable to the plaintiff, would permit a jury to find that her dismissal was motivated *at least in part* by age discrimination." *Gorzynski*, 596 F.3d at 106. In *Gross*, the Supreme Court clarified that under the ADEA age must be "'the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Id*. (quoting *Gross*, 557 U.S. at 180).

14

three sets of alleged comments by Boxbaum respecting or alluding to physicians' ages: one in which Boxbaum asked Plaintiff when he planned to retire and two in which Boxbaum indicated a preference for hiring younger urology residents to older urologists. (Pl. Tr. at 41:4-45:10.) "In determining whether a remark is probative" in an employment discrimination claim, courts in this circuit consider four factors, none of which are dispositive: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

All of the allegedly probative remarks were made by Boxbaum, ACP's Vice President of Operations, who—as discussed above—was neither Plaintiff's supervisor nor directly involved in the decision to terminate Plaintiff's employment, but who held a management-level position and was involved in communicating to Plaintiff the news of his termination. Accordingly, while Boxbaum's relationship to Plaintiff and involvement in the decision-making process do not render his remarks particularly probative, they also do not wholly preclude the possibility that the remarks might have probative value. As for timing, Plaintiff alleges that all three sets of remarks were made in 2016, and that the third remark was made in May or June of that year. (Pl. Tr. at 41:24-42:13, 43:21-25, 44:7-18.) Thus, all of the remarks were made less than a year prior to October 6, 2016, when Plaintiff was notified of the termination, but not within the three months immediately preceding that event. The timing of the remarks tends to minimize rather than amplify their probative value. *Compare Pierre v. Air Serv Sec.*, No. 14-cv-5915 (MKB), 2016 WL 11396816, at *9 (E.D.N.Y. July 28, 2016) (finding that remark made "four months prior to [p]laintiff's termination" was not probative, due in part to "the time that elapsed between [the] comment and [p]laintiff's termination") *and Sethi v. Narod*, 12 F. Supp. 3d 505, 543 (E.D.N.Y. 2014) (finding that timing of remark made "three

15

months prior to [p]laintiff's suspension . . . supports a finding that the remarks are not probative of discriminatory animus") with *Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (finding that remark made "less than six weeks prior to [the plaintiff's] termination" "can bear some weight in demonstrating discriminatory bias").

The content and context of Boxbaum's remarks regarding potential urologist hires further suggest that those remarks are not probative of Defendant's intent in terminating Plaintiff's employment. The remarks did not directly concern Plaintiff's own age or employment status; as such, they are at best circumstantial evidence of ACP's intent, insofar as they suggest that Boxbaum specifically or ACP generally preferred younger physicians to older ones. Moreover, Plaintiff himself testified that Boxbaum cited the lower costs of hiring younger physicians as the basis for his alleged hiring preference. (Pl. Tr. at 41:12-23, 43:10-20.) An employer's "concern with the elevated costs of senior employees does not constitute age discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (distinguishing decisions based on age from those based on a "motivating factor [that] is correlated with age," such as pension status). Thus, Plaintiff's own testimony undermines his claim that Boxbaum's remarks indicate that age-based discriminatory animus was the cause of his termination.

Nor do the content and context of Boxbaum's remark about Plaintiff's theoretical retirement plans render it particularly probative of Defendant's intent. Plaintiff alleges that during a lunch that followed a monthly meeting, he approached Boxbaum to discuss the open urologist positions and Boxbaum responded, "no, no. Don't mention that. How about you? When are you retiring?" (Pl. Tr. at 44:7-45:10.) While this remark invoked the subject of Plaintiff's employment status at ACP and therefore warrants some weight in assessing Defendant's intent, no reasonable jury could conclude based exclusively or primarily on this casual, offhand remark that age discrimination motivated Defendant's decision to terminate Plaintiff's employment. *See, e.g.,*

16

*Fried*, 500 F. App'x at 41 (concluding that a CEO's statement mentioning the plaintiff's age and asking "how long [he] expect[s] to work . . . can bear some weight in demonstrating discriminatory bias" but "cannot bear th[e] weight" necessary to establish that age bias was the cause of plaintiff's termination).

Moreover, Plaintiff fails to provide sufficient evidence to rebut Defendant's contention that behavior and performance issues were the actual reason for terminating Plaintiff's employment. Plaintiff disputes the claim that he failed his February 2016 internal audit; resolving that factual dispute in Plaintiff's favor arguably suggests that he had improved his compliance with certain office protocols following his completion of the PIP. But even if that is the case, Plaintiff provides no evidence other than his own testimony to refute Defendant's well documented claim that Plaintiff exhibited a pattern of volatile and aggressive behavior, which yielded complaints from his colleagues both before and after his participation in the PIP. "Merely disagreeing with [an employer's] assessment of work performance . . . is insufficient to raise a triable issue of fact regarding pretext." *Iverson v. Verizon Comms.*, No. 08-cv-8873 (SAS), 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009). While Plaintiff may be sincere in his belief that he did not behave towards colleagues in a hostile or inappropriate manner, the weight of the evidence contradicts such a belief. On this record, no reasonable jury could conclude by a preponderance of the evidence that Plaintiff's putative behavioral issues were mere pretext for age discrimination.

Finally, Plaintiff argues that Defendant's proffered justifications are clearly pretextual because Defendant informed Plaintiff that the termination of his employment was "without cause." (Opp. at 13, 16-17, 19.) Plaintiff misconstrues Defendant's representation that the termination of Plaintiff's employment was "without cause" as a concession that Plaintiff's termination was "not based on performance o[r] other issues." (Pl. 56.1 ¶ 27.) But the fact that Plaintiff, an at-will employee, was terminated "without cause" does not preclude the possibility that

the termination was motivated by a legitimate, nondiscriminatory rationale, or even raise a question of fact as to the genuineness of the performance-related rationales articulated by Defendant. The termination of an at-will employee's contract need not be designated as "for cause" in order to be grounded in rational, nondiscriminatory reasons, and a termination designated as "without cause" is not definitionally lacking in legitimate justifications.

Because Plaintiff cannot establish a genuine issue of material fact as to whether Defendant's justifications for his termination are pretextual, he also cannot establish by a preponderance of the evidence that age discrimination motivated the termination of his employment. For that reason, Defendant's motion for summary judgment is granted.

### IV.  CONCLUSION

For the reasons stated above, Defendant's (Dkt. 25) motion for summary judgment is granted with prejudice. The Clerk of the Court is respectfully DIRECTED to close the case.

SO ORDERED.

Dated:     Brooklyn, New York
           September 14, 2020

                                          /s/ Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge